SHELTON (CHURCH v.). See Case No. 2,-714.

SHELTON v. The MARY. See Cases Nos. 9,182–9,191.

SHELTON (UNITED STATES v.). See Case No. 16,272.

## Case No. 12,753.

### In re SHEPARD.

[1 N. B. R. 439 [1] (Quarto. 115); 7 Am. Law Reg. (N. S.) 484; 1 Am. Law T. Rep. Bankr. 49.]

District Court, N. D. New York. March 31. 1868.

BANKRUPTCY—CITIZENSHIP — LIMITATIONS—PROVEN DEBT—DISCHARGE—WHO MAY OPPOSE.

1. A debt against a bankrupt's estate may be proven before a United States commissioner, although the bankrupt and creditor both reside in the same judicial district.

[Cited in Re Merrick, Case No. 9,463.]

2. A debt barred by the statute of limitations of the state in which the bankrupt resides, may still be proven against his estate in bankruptcy.

[Cited in Re Cornwall, Case No. 3,250; Re Noesen, Id. 10,288; Nicholas v. Murray, Id. 10,223.]

3. A creditor who, after making his deposition to prove his debt, retains possession of the deposition, and does not allow it to pass into the hands of the assignee in bankruptcy, is not a creditor who has proven his debt.

4. Any creditor of a bankrupt may oppose the discharge, whether he shall have proven his debt or not.

[Cited in Re Boutelle, Case No. 1,705; Re Groome, 1 Fed. 469.]

[Cited in Burpee v. Sparhawk, 108 Mass. 114.]

[1] [Reprinted from 1 N. B. R. 439, by permission.]

[In the matter of Luther Shepard, a bankrupt.]

E. Gorham, for bankrupt creditor.

E. Gardner, for creditors.

HALL, District Judge. This case came on to be heard upon the petition of the bankrupt for "a full discharge from all his debts, and a certificate thereof;" and upon due proof of the service and publication of notice of the order to show cause against such discharge, as required by the bankrupt act [of 1867 (14 Stat. 517)], the general orders in bankruptcy, and the rules of this court. At the time fixed for showing cause, two of the bankrupt's creditors, whose debts were set forth in the schedules annexed to his original petition, entered their appearance, and proposed to contest his right to a discharge; whereupon it was objected that they were not "creditors who had proven their debts," and consequently had no right to be heard. It was also insisted that the alleged debts, which such creditors had attempted to prove, were barred by the statute of limitations of New York, where such debtor and creditors resided; and that such alleged debts, being so barred by the statute, the parties appearing were not creditors, and had no right to contest the bankrupt's discharge. It was conceded that a deposition in proper form for the proof of the debt of one of the creditors had been made before a commissioner appointed by the circuit court, and that such deposition had been duly transmitted to the assignee; but it was insisted that the commissioner had no authority to take proof of such debt, inasmuch as the creditor was, at the time, a resident of this judicial district.

The question thus presented is not free from doubt. The 22d section of the bankrupt act declares "that all proofs of debts against the estate of the bankrupt, by, or in behalf of, the creditors residing within the judicial district where the proceedings in bankruptcy are pending, shall be made before one of the registers of the court in said district, and by, or in behalf of, non-resident creditors before any register in bankruptcy in the judicial district where such creditors, or either of them, reside, or before any commissioner of the circuit court authorized to administer oaths in any district." There is, in the language of this provision, no clear indication that congress intended that the right to prove their debts before a commissioner should be confined to creditors not residing within the judicial district in which the proceedings were pending. The sentence is punctuated by commas only, so that we have not even the indication of that intention, which would have been given if a semicolon, instead of a comma, had been inserted after the words "said district;" but on the other hand there is not the indication of a different intention which would have been given if a semicolon, instead of a comma, had been inserted after the word "reside." So far as the punctuation,

the particular language, or the grammatical construction of the sentence furnish any evidence of the intention of congress in respect to this question, it is more favorable to the construction which would sustain the authority of the commissioners in this case than to the opposite construction; for the concluding portion of the sentence is, in these respects, as closely connected with the first portion of the sentence as with the second or middle portion. It is true that the concluding portion of the sentence is separated from the portion of it which provides for the proof of debts by resident creditors, but this separation furnishes no reliable evidence that congress intended to deny to resident creditors the right to prove their debts before a commissioner, for the connection of the three provisions in one sentence necessarily required that those placed first and last should be separated by the interposition of the other. The intent to require all proofs made before registers to be taken before a register of the judicial district in which the creditor resides, is clearly expressed; and it is probable that the concluding lines of the sentence, which authorize proof before commissioners, were added by way of amendment,—perhaps by another hand,—without a careful consideration of their import when connected with the preceding provisions. The difference between the concluding provision and the two preceding ones is strongly marked. In the first two of these provisions the authority of the registers is expressly limited by the words, "in said district," in the one case, and by the words "in the judicial district where such creditors, or either of them, reside," in the other; but no words of limitation are found in this concluding provision. On the contrary, there are very clear indications that this provision was intended to be more general and comprehensive: for the unlimited term any is twice used, first in reference to the commissioner, and again in reference to the district. If it was not intended to give a creditor residing in the judicial district where the proceedings are pending the right to prove his debt before a commissioner, it would seem that the right would have been limited by the use of the words "in said district" at the conclusion of this sentence, as had been done in the first clause; but instead of this the general words "in any district," are used. And these words, which conclude the sentence, can have no legal effect unless they are held to give the alternative right to resident as well as to non-resident creditors. If the words "in any district" had been omitted, this right would still have been clear as to non-resident creditors, though more doubtful than it now is in respect to creditors residing within the judicial district where the proceedings are pending. This alternative right to prove debts before a commissioner was doubtless conceded for the convenience of creditors; and the reasons of convenience which required it to be extended to non-resident creditors, equally required its extension to resident creditors also. So far as the convenience of the creditor is concerned, it is immaterial whether the debtor's petition is pending in the judicial district in which the creditor resides, or in another district.

If it be suggested that congress may have desired to secure to the registers, rather than to the commissioners, the fees for taking such proofs, the ready answer is, that if such a desire was allowed to influence the action of congress in respect to resident creditors, it is impossible to assign any satisfactory reason for limiting its influence to the case of resident creditors, instead of extending it to both resident and non-resident creditors. These considerations seem to require that the provisions of the statute should be so construed as to give this alternative right to resident as well as to non-resident creditors. And I adopt this construction more willingly, as a different construction would invalidate the proof of many debts taken in good faith before commissioners, when the creditors were residents of the district in which the proceedings were pending; for the more liberal construction has been frequently, if not generally given to this provision, by registers and commissioners, as well as by practitioners in bankruptcy. Indeed, in the present case, it was shown by affidavit that the proof was made before a commissioner, under the advice of the register having the case in charge, that the creditor, though resident in this district, might make proof of his debt before a commissioner as well as before the register. The proof referred to will be held sufficient and the creditor regarded as one who has proved his debt and is entitled to oppose the discharge.

Before reaching the conclusion just stated, I have necessarily considered the objection that the debts of the opposing creditors were barred by the New York statute of limitations. This statute (like the statutes of limitations of most of the states of the Union) does not, in terms, provide that the debt shall be extinguished by the lapse of time required to constitute the statute a defence to an action brought in the courts of New York, and it is a good defence only when specially set up by answer, as a defence to an action brought in this state. The statute, therefore, simply affects the remedy, and it leaves the creditor at liberty to pursue in another state any remedy authorized by the laws of that state.

It is believed that in some of the states, as in Iowa (Code 1851), Indiana (Civ. Code, 1852), and in Ohio (Rev. St. 1854), it is provided by statute that actions shall not be brought on demands barred by the statutes of limitations of the states where the cause of action arose; and in some states their statutes may, in terms, provide that the debt shall be extinguished by the lapse of time; but the statute of this state contains no such

provision. And it does not purport to extinguish or destroy the debt; and such is doubtless the case in all, or nearly all of the states of the Union. That the operation of such statutes does not annul or extinguish the debt, but only affects the remedy, and that such statutes have no effect out of the state in which they are passed, will sufficiently appear upon an examination of the following authorities: Rawls v. American Mut. Life Ins. Co., 36 Barb. 357; McElmoyle v. Cohen, 13 Pet. [38 U. S.] 312; Townsend v. Jemison, 9 How. [50 U. S.] 407; Gans v. Frank, 36 Barb. 320; Power v. Hathaway, 43 Barb. 214; Ruggles v. Keeler, 3 Johns. 263; Bulger v. Roche, 11 Pick. 39; Dwight v. Clark, 7 Mass. 515; Decouche v. Savetier, 3 Johns. Ch. 190; Lincoln v. Battelle, 6 Wend. 475; Byrne v. Crowninshield, 17 Mass. 55, and Medbury v. Hopkins, 3 Conn. 472. See, also, Olcott v. Tioga R. R. Co., 20 N. Y. 210; 1 Kent, Comm. (10th Ed.) 261, 262, and notes; and 2 Kent, Comm. (10th Ed.) 462, 463; Story, Confl. Laws, §§ 576, 577, 5820, 5826. The debt, then, exists, and in most of the states of the Union an action can be sustained against the debtor if found within their jurisdiction. This right of the creditor, considering the migratory habits of our people, and their known propensities to travel from state to state, is a valuable right, which would be barred by the discharge; and I shall concur in the opinion of my learned brother of the Southern district upon the question. and hold that the fact that the creditor's remedy for his debt, by suit in New York, is barred by the statute of limitations, does not prevent the proof of such debt or bar his right to oppose the discharge of the bankrupt.

It must be conceded that the question is not free from embarrassment, and that it has been differently decided by the learned judge of the Massachusetts district, who relied, in part, at least, upon the English decisions. In that country it has been settled, after much conflict of judicial opinion. that a debt barred by the English statute of limitations is not provable in their bankruptcy courts (Ex parte Dewdney, 15 Ves. 498; 1 Christ. Bankr. 221, and notes). but the circumstances under which the question was decided there are very different from those under which it is presented here. Their statute of limitations and their bankrupt act exist by the same legislative authority, and the operation of the statute is. territorially, coextensive with the proper force and operation of the bankrupt act; but in the United States statutes of limitations have no effect beyond the territory of the single state which enacts them. while a discharge in bankruptcy under the laws of the United States, operates with equal force in every state of the Union. The English statute of limitation operating throughout the whole of England. and it being there held that a foreign creditor (one whose debt was contracted and to be paid elsewhere than in England, whether in the United States, France, Germany, or an English or foreign colony) would not, even when suit for its collection was brought in an English court, be barred by a discharge in bankruptcy granted in England, unless the foreign creditor voluntarily made himself a party to the proceeding (Eden, Bankr. Law, 422, 423; Smith v. Buchanan, 1 East, 6), there is much reason for the adoption of the English rule there which does not apply here.

Our own courts hold that a bankrupt's discharge in a foreign country does not discharge a debt made in and with reference to the laws of this country (Green v. Sarmiento [Case No. 5,760]; Zarega's Case [Id. 18,204]), agreeing in this respect with the English doctrine. It may also be conceded that the propriety of allowing debts barred by the statute to be proved in bankruptcy may be opposed with much force of argument, by reason of the apparent injustice of allowing it in particular cases; but on the other hand, arguments of at least equal force may be urged against the opposite rule. In respect to questions arising under statutes of limitations, the lex fori prevails, and if the statutes of the state in which the bankruptcy proceedings are pending are to furnish the rule of limitation, the New England creditors, by simple contract of a bankrupt who has resided in this state for five years, or for only five months, may prove their debts of twelve years' standing when. if he had not changed his residence, they would not have been provable; and a bankrupt who resided and was largely indebted to relatives in New Jersey. where the statute of limitations would be a good bar. might carry on business for four months in the city of New York, and then present his petition in bankruptcy there, and allow all his New Jersey creditors, whose debts were barred by their statute of limitations, to prove their debts. Again. the states may at any time modify their statutes of limitations, and if the state of Wisconsin or Virginia should provide by statute that no action for any debt, or for any debt due to a resident of another state, should be maintained after six months from the time the cause of action accrued, would the act be binding upon the United States bankrupt courts? Or, if a state should pass an act that no debt should be proved in bankruptcy proceedings in that state after the expiration of six months from the time the debt accrued, would the bankruptcy courts regard such an act? The adoption of the statutes of limitation of the particular state, in which the proceedings in bankruptcy are pending, would, in many cases, give the bankrupt the power to determine whether the statutes should, or should not, be a bar by remaining a resident of the state where he had long resided. and whose statute of limitation would be a good bar; or by re-

moving to, and making his application in, another state, where the statute would be no bar.

But it is unnecessary to pursue this line of argument. The real question is, whether a debt against the statute of limitations of this state has run is still a debt, and that it is there can be no doubt. If it is still a debt there is no statute of the state, or of the United States, which provides that it shall not be proved or allowed in proceedings in bankruptcy; and until some statute of limitations shall be adopted by congress for the guidance of courts of bankruptcy no uniform or satisfactory rule of limitation can be applied by those courts. And even if they could devise a uniform and satisfactory rule, I can find no authority for those courts to provide, or adopt from the statutes of the state, any such rule of limitation.

In respect to the claims of the other opposing creditor, it was shown that he had appeared before the register having this case in charge, and had made a deposition, drawn up by the register himself, in the proper form for the proof of such creditor's debt, but that such deposition had been retained in the hands of the creditor, or his attorney, and had never been delivered or sent to the assignee. It also appeared that the creditor had afterwards commenced a suit against the bankrupt for the purpose of obtaining a judgment in a state court for the amount of his debt, and had retained possession of the deposition referred to until it was filed with the clerk, at the time of entering his appearance in opposition to the bankrupt's discharge. It was insisted, upon this state of facts, that the court ought not to allow the creditor to oppose the bankrupt's discharge.

The 22d section of the bankrupt act, after prescribing the manner and form of making the proof of a debt by deposition, further provides as follows: "If the proof is satisfactory to the register or commissioner, it shall be signed by the deponent, and delivered or sent by mail to the assignee, who shall examine and compare it with the books and accounts of the bankrupt, and shall register, in a book to be kept for that purpose, the names of creditors, who have proved their claims," &c: and it is evidently the intention of the act that the register or commissioner taking the proof shall decide, in the first instance, upon the sufficiency of the proof. If the proof is satisfactory, the officer is to deliver it to the assignee, or send it to him by mail; and this act of the officer is the only evidence, that the proof is satisfactory, which has been provided for, either by the statute or the general orders and forms prescribed by the justices of the supreme court. The return of the deposition to the creditor, when entirely unexplained, would seem to indicate that the proof was not satisfactory; or else that the creditor did not intend to complete his proof and become thereby a "creditor who had

proved his debt;" and the subsequent act of the creditor in commencing a suit against his debtor (which, under the 21st section of the act, he had no right to do if he had proved his debt), is prima facie evidence that the proof was not satisfactory to the register, or else that the creditor did not intend, by making the deposition, to become a creditor who had proved his debt.

Under the circumstances stated, I am of the opinion that the creditor, who has now filed the deposition with the clerk, cannot be considered as "a creditor who has proved his debt," within the technical meaning of those terms as used in the bankrupt act. If this conclusion is correct, the question arises whether a person who shows, by affidavit, or otherwise, that he is a creditor of the bankrupt, has a right to appear and oppose his discharge without being, in technical strictness, "a creditor who has proved his debt?" This question is one of great importance, and in respect to which there is much difference of opinion. It was stated on the argument that the learned judge of the Southern district of New York had decided against this right; and I am aware that others, whose opinions are entitled to great respect, have expressed similar opinions. It is probable that in making his decision Judge Blatchford relied upon the decision of his learned predecessor in King's Case [Case No. 7,784], to which I shall presently refer. I have carefully examined that case and other authorities, and after a careful consideration of the provisions of the present bankrupt act, I have reached a conclusion different from that announced by the learned judges of the Southern district. While I regret this difference of opinion, my own convictions are so strong that I feel bound to decide the question in accordance with such convictions, and to state my reasons therefor; and then to leave it to congress to settle the question by legislation, if such legislation shall be deemed expedient.

In discussing the question thus presented, it is proper first to consider the nature and object of the proceeding which requires its determination. The question can only arise upon the application of a bankrupt for a judicial discharge from all his debts, and these applications are to be granted in most cases without even a partial performance of the legal obligations of the bankrupt. The application is to be granted or denied by a court in the regular course of judicial proceedings; and the discharge, if it be properly obtained, is (with few exceptions) a conclusive bar to any suit prosecuted for the collection of a debt, provable against the bankrupt's estate, which existed at the time of the filing of his original petition. That all creditors whose rights may thus be conclusively barred by the decision of a court of justice, should have the right to be heard in opposition to such decision, is a proposition so plain and self-evident, that it would seem that its obvious truth

would be at once admitted, alike by lawyers and laymen, without the thought that either argument or authority might be requisite for its maintenance. If authorities were required it would be easy to produce them in great numbers, and from the highest sources; but two or three will suffice. In the case of The Mary, 9 Cranch [13 U. S.] 126, 144, Chief Justice Marshall, in delivering the opinion of the supreme court of the United States, said: "It is a principle of natural justice, of universal obligation, that before the rights of an individual be bound by a judicial sentence he shall have notice, either actual or constructive, of the proceedings against him." But notice to a party is worthless, unless he has the privilege of being heard; and Mr. Justice Story, in Bradstreet v. Neptune Insurance Co. [Case No. 1,793], said: "It is a rule founded in the first principles of natural justice that a party shall have an opportunity to be heard in his defence before his property is condemned," &c. In the case of Hollingsworth v. Barbour, 4 Pet. [29 U. S.] 466, it was declared by Mr. Justice Trimble at the circuit (page 472), that "by the general law of the land, no court is authorized to render a judgment or decree against any one or his estate, until after due notice, by service of process to appear and defend." And he added: "This principle is dictated by natural justice; and is only to be departed from in cases expressly warranted by law, and excepted out of the general rule." And he further declared (page 475), that the reason of the rule that judgments and decrees are binding only on parties and privies "is founded on the immutable principles of justice that no man's right should be prejudiced by the judgment or decree of a court without an opportunity of defending the right," &c.: and all this was concurred in by the supreme court (page 470).

In view of the principles thus sanctioned by the highest authority, it would seem to be a reproach to the national legislature to hold that it was intended that any creditor whose claims would be barred by a discharge should be deprived of his just right to be heard, in opposition to such discharge; and certainly an intention to violate those principles of natural justice and deny the creditor's right to be heard should not be imputed to congress unless such intention is clearly expressed, or must necessarily be implied from the language of the statute. Hollingsworth v. Barbour, 4 Pet. [29 U. S.] 472. It is certain that no such intention is clearly expressed in the bankrupt act now in force, and it is believed that no such intention can be reasonably inferred from any of its provisions.

But before discussing these provisions it may be proper to refer to the provisions of the act of 1841 [5 Stat. 440] and to the decision under the act made by the learned judge who then presided in the Southern district of New York, and which, it is supposed, led to the decision lately made by his successor, under the act of 1867. In the case of In re King [Case No. 7,784], Judge Betts decided that, under the bankrupt act of 1841, a creditor who had no interest, except in that character, and who had not proved his debt, could not be permitted to oppose a bankrupt's discharge. That case was decided upon the 4th section of the act of 1841, which provided that no discharge should be granted "until after seventy days' notice in some public newspaper, designated by such court, to all creditors who have proved their debts, and other persons in interest, to appear at a particular time and place to show cause why such discharge and certificate shall not be granted; at which time and place any such creditors, or other person in interest, may appear and contest the right of the bankrupt thereto;" and it was upon this language that Judge Betts held that creditors, "as such, could not rightfully appear in the controversy, but must have the further qualification of having proved their debts." It is clear that there was no express exclusion of the right of the creditor who had not proved his debt by the language of the 4th section above quoted. Such a creditor was a person in interest, and as he was not embraced in the class of "creditors who have proved their debts," he was, by the ordinary rules of construction, embraced in the other class, of other "persons in interest." In the Case of Tebbetts [Id. 13,817], Mr. Justice Story said in respect to parties opposing a discharge: "If they are not strictly, in the sense of the law, creditors of the bankrupt, they are at least equitable creditors;" and declaring that their claims would be enforced in a court of equity, he allowed them to oppose the discharge, although (as I understand the case) they were not "creditors who had proved their debts." In the Case of Book [Id. 1,637], Mr. Justice McLean, in commenting upon and overruling the Case of King, said: "In the Matter of King [supra], (Southern district of New York), it was held that 'the terms other persons in interest used in the 5th section, are employed to designate those who could not prove their debts as creditors, and do not embrace, but exclude creditors.' That these words may embrace those who are not properly creditors, but have an interest in the matter, may be admitted; but that they exclude creditors who have not proved their debts, is a gratuitous assumption not warranted by law." In Haxtun v. Corse, 2 Barb. Ch. 506, 529, the decision in King's Case, was commented upon by the late Chancellor Walworth, and that eminent jurist expressed the opinion that Judge Betts's decision was "an erroneous construction of the statute . . . . and that the framers of the law intended to give all persons interested in opposing the bankrupt's discharge, as well as creditors who had proved their debts against him, the privilege of appearing and contesting his right to such a discharge."

Under the provisions of the same section of the act of 1841, it is clear that any creditor of the bankrupt, whether he had proved his debt or not, might impeach the discharge (when pleaded as a defence to the suit of such creditor), for fraud or wilful concealment which might have been urged in opposition to the discharge; and if Judge Betts's decision is correct, a creditor who under this same section could not oppose the action of the court in granting the discharge when applied for, could defeat such action after the discharge had been granted. This would be absurd, and I cannot but think that, both upon reason and authority, it may be properly assumed that Judge Betts's decision in King's Case, was a hasty and erroneous construction of the act of 1841. But the reasoning upon which Judge Betts based his opinion in King's Case, is not applicable to a case arising under the existing bankrupt act. It may be conceded that the 29th section of the present act, which provides for notice to show cause against a discharge, carefully provides for notice to creditors who have proved their debts, and that it does not contain any very clearly expressed provision for giving notice, in terms, to any other parties. It provides that the court shall order notice of an application for a discharge "to be given by mail to all creditors who have proved their debts, and by publication at least once a week in such newspapers as the court shall designate, due regard being had to the general circulation of the same in the district, or in that portion of the district in which the bankrupt and his creditors reside, to appear on a day appointed for that purpose and show cause." &c. Now, though it is not expressly stated that notice must be given to any creditors except those who have proved their debts, it is clearly to be inferred that the publication of the notices is required for the benefit of other creditors; for this publication is in addition to the personal notice required to be given by mail to all creditors who have proved their debts, and in providing for the designation of the newspapers in which the publication is to be made, reference is made to the creditors generally, and not alone to those who have proved their debts. It will also be observed that in this section no reference is made to "other persons in interest;" but the more important, and under Judge Betts's decision the vitally important difference between the acts of 1841 and 1867 is, that although in the act of 1867 there is, in immediate connection with these provisions for giving notice, no provision declaring the right of "creditors who have proved their debts and others in interest," to appear and oppose the discharge, as was the case in the act of 1841, the last of these omissions is supplied by the 31st section of the present bankrupt act, which provides "that any creditor opposing the discharge of a bankrupt may file a specification in writing of the

ground of his opposition," thus providing for opposition by "any creditor," and not by any creditor who has proved his debt, as in the act of 1841. This is a very important change from the language of the act of 1841; and if the decision in King's Case, was not erroneous it is not an authority against the right of the creditor in this case, for the term any creditor can by no just construction be limited to a creditor who has proved his debt.

Notwithstanding the provisions of the acts of 1841 and 1867, which are apparently intended to give permission to creditors, or to creditors and others in interest, to appear and oppose a discharge, it is very clear under the authorities before cited and many others of a similar character, that the courts, in administering these acts, would have allowed such opposition if no such permission had been expressly given; and in order to bar the creditor's right to appear and oppose the discharge, the bankrupt must show that such right has been taken away by the statute, either in express terms, or by necessary implication. Hollingsworth v. Barbour, ubi supra. As has been shown, the act of 1867, in the sections which bear upon this question, only speaks of creditors who have proved their debts in the one case, and creditors generally in the other; and yet form No. 51 prescribed by the justices of the supreme court of the United States very properly provides for notice to all creditors who have proved their debts "and other persons in interest;" although "other persons in interest" are not embraced in any of the provisions of the act relating to the application for a discharge, the notice to show cause against the same, or the opposition to be made to such application. Parties who are not creditors are, therefore, to be permitted to oppose a discharge upon principles of justice universally acknowledged by the courts of all civilized countries, and not under any permission given by the bankrupt act.

But it may be said that without any express provision of the statute, or any necessary implication from its language, the bankruptcy courts should require a creditor to show his interest in the proceedings, by proving his debt, before allowing him a standing in court for the purpose of opposing a discharge; and that requiring him to take the position of a creditor who has proved his debt is no denial of the right which has been declared to be founded in the principles of natural justice, for the reason that such requirement is easily fulfilled. It is conceded that proof of his interest, if it does not clearly appear by the schedules of the bankrupt, may properly be required of the creditor; but it being certain that a party, in order to become a creditor who has proved his debt, must in many cases relinquish most important rights, and that to impose upon the creditor, unnecessarily, any injurious terms, as a condition of his being heard, is as inconsistent with the principles of justice, and,

to the extent of the injury inflicted by the imposition of such conditions, as gross a denial of the just rights of the creditor as an absolute refusal to allow him to be heard, he ought not to be required to become, technically, "a creditor who has proved his debt." Very injurious terms will certainly be imposed in many cases if it be held that a party must take the position of a "creditor who has proved his debt" against the estate of the bankrupt, before he can oppose his discharge. In many cases in which the application for a discharge is made at the end of sixty days under section 29, on the ground that no assets have come to the hands of the assignee, it will (under the provisions of section 20) be impossible for the creditor to prove his debt, without relinquishing his lien by judgment or mortgage, at any time before the day fixed for the final hearing on the application for a discharge.

By section 20, it is provided that "when a creditor has a mortgage or pledge of real or personal property of the bankrupt, or a lien thereon for securing the payment of a debt owing to him from the bankrupt, he shall be admitted as creditor only for the balance of the debt after deducting the value of such property, to be ascertained by agreement between him and the assignee, or by a sale thereof, to be made in such manner as the court shall direct; or the creditor may release or convey his claim to the assignee upon such property and be admitted to prove his whole debt. . . . . If the property is not so sold or delivered up, the creditor shall not be allowed to prove any part of his debt."

By section 21, it is provided that "no creditor proving his debt or claim shall be allowed to maintain any suit at law or equity therefor against the bankrupt, but shall be deemed to have waived all right of action and suit against said bankrupt, and all proceedings already commenced, or unsatisfied judgments already obtained thereon shall be deemed to be discharged and surrendered thereby," &c. Why should a creditor holding a mortgage or judgment for $15,000, partially secured by its lien on $10,000 worth of real or personal estate, and who is willing that the other creditors of the bankrupt should take all of the property of the bankrupt which is not bound by this mortgage or judgment, be compelled to relinquish his lien, before he is allowed to show fraud on the part of the bankrupt and defeat his application for a discharge, in order to preserve the right to collect his debt out of the subsequently acquired property of the bankrupt? It is quite proper to require a creditor to prove a debt before allowing him to make any motion in respect to the bankrupt's estate in the hands of the assignee; but why should it be required, by the legislature or by the courts, when the creditor only seeks to prevent the bankrupt's discharge? That the legislature has not expressly required it

is very clear, and there is strong reason for believing that it was not intended to be required.

By the 35th section of the present act "any creditor or creditors of said bankrupt, whose debt was proved or provable against the estate in bankruptcy who shall see fit to contest the validity of said discharge on the ground that it was fraudulently obtained, may, at any time within two years after the date thereof, apply to the court which granted it to set aside and annul the same:" and there is no requirement that he shall prove his debt against the bankrupt's estate. It would seem that to deny a creditor the right to oppose the granting of a discharge because he had not proved his debt and then allow him to apply to the court which granted it to set it aside, at any time within two years, without proving such debt, would be grossly absurd.

If the narrow construction which has been contended for is to prevail and no effect is to be given to the 31st section of the present bankrupt act, it would seem that no one but a creditor who has proved his debt can oppose a bankrupt's discharge, as other persons in interest are not named in the act; and upon the same principles of construction it may well be contended that only such creditors as had proved their debts prior to the granting of the order to show cause can be allowed to appear and make such opposition. I am satisfied that neither of these propositions can be maintained; and after the fullest consideration I have been able to give the whole subject, I am of the opinion that the construction given to the act of 1841, by Mr. Justice McLean and Chancellor Walworth, and not that given by Judge Betts in King's Case, was the proper construction of that act; and that, under the 31st section of the present bankrupt act, there is no sufficient reason for denying the right of the creditors, who have appeared in this case, to contest the discharge of the bankrupt, even if it be conceded that King's Case was properly decided. They will therefore be recognized as having a proper standing in court for that purpose.