# FOURTH DEPARTMENT.

## GENERAL TERM, OCTOBER, 1873.

MULLINER *et al.* v. GUARDIAN MUTUAL LIFE INSURANCE
COMPANY.

*Evidence — action on life insurance policy — declarations of insured person —
testimony of experts — representations of insured person, when material.*

In an action upon a life insurance policy, the declarations of the person insured,
made after the issue of the policy, to the effect that he was subject to severe
headaches, for which he had, when afflicted, taken large quantities of
laudanum, *held* inadmissible to prove that the deceased had made false
representations in his application for the policy.

The fact that the person whose declarations are sought to be proved is dead,
affords no ground for the admission of such declarations.

The admission of testimony of a physician who had visited deceased and pre-
scribed for him for an attack of the headache, subsequent to the issue of
the policy, concerning the interview with deceased, *held*, not inconsistent
with the exclusion of the other testimony, being not the mere declaration
of the deceased, but the testimony of an expert to a fact.

The deceased died from an overdose of laudanum taken for the headache.
*Held*, that this fact did not show that the omission of deceased to mention
to the defendant the headaches, and that he was accustomed to take lauda-
num therefor, was material.

MOTION for a new trial after verdict for the plaintiff at the Mon-
roe circuit, and exceptions ordered to be heard at the General Term
in the first instance.

The action was brought by plaintiffs to recover the amount of a
policy of insurance issued by defendant upon the life of George
Mulliner, but payable to Florence Mulliner, his wife, and George
Mulliner and Ellen M. Mulliner, his children. The policy was
issued December 31, 1869. Mulliner died April 20, 1870.

The defense was put upon the ground that the insured
made untrue representations in his application for the policy.
1. That he never had any serious illness. 2. That he had not sup-
pressed any fact in regard to his health and habits. 3. That the

functions of his brain, his muscular and nervous system, were in a healthy state, whereas they had been materially impaired and diseased, as indicated by constantly recurring headache and by the use of opium. 4. That he never used opium in any form, whereas he had used opium for many years for the purpose of obtaining relief from such headaches, and his death resulted from such use. That Mulliner suppressed the above facts concerning his headaches and the use of opium.

Evidence was given at the trial upon the subject of these allegations in the answer, especially in reference to the circumstances that Mulliner had for some years previous been subject to headaches, for which he usually took laudanum, and that it was from an overdose of laudanum that he died.

Evidence of declarations made by Mulliner after procuring the policy in question, that he had, for several years prior to applying therefor, been subject to very severe headaches, and that he had, during that time, used, when so afflicted, large quantities of laudanum, was offered by defendant. This evidence was excluded by the court.

The court was asked by defendant to exclude the testimony of one Dr. Clark, offered by the plaintiff, concerning an interview had between him and Mulliner subsequent to the issue of the policy, at which he administered certain remedies for the headache, on the ground that it was not an interview concerning which the defendant had given evidence, but occurred subsequent to the issue of the policy. This request was refused, and defendant excepted.

Other questions were raised at the trial, but are not passed upon in the opinion, upon the ground that the court of appeals has already, in another case, decided them.

*W. F. Cogswell*, for plaintiffs.

*George F. Danforth*, for defendant.

TALCOTT, J. The evidence in this case is substantially the same as that in the case of *Higbie, Administrator*, v. *The Same Defendant*. Both are actions upon policies issued upon the life of George Mulliner. In the case of Higbie, the policy was issued to Mulliner himself.

In this case the assured parties are the wife and two children of Mulliner.

The recovery in behalf of the administrator was sustained by this court, and has since been affirmed by the court of appeals. There remains but one or two points wherein it can be claimed that this case differs substantially from that which has already been decided by the court of last resort.

On the trial of this action, the defendant offered to prove declarations of Mulliner, after the issuing of the policy, to the effect that he had been for many years troubled with severe headaches, and, when so afflicted, that he had taken large quantities of laudanum as a remedy. This evidence was objected to. The court excluded it and the defendant excepted. In support of the admissibility of this evidence, the learned counsel for the defendant relies upon the case of *Aveson* v. *Kinnaird*, 6 East, 188, which does hold, for reasons not very clearly or satisfactorily stated, that the declarations of the wife while sick, soon after the making of the agreement for a policy on the life of the wife in favor of the husband (but apparently before the policy had been in fact issued), touching the state of her health before and after the application for insurance, were admissible in evidence against the husband in an action on the policy.

This case was professedly followed in *Kelsey* v. *The Universal Life Ins. Co.,* 35 Conn. 225, where the declarations of the wife, made some time before the application for the policy, were held admissible. But the case itself is maintainable upon no principle. It is an attempt to prove a fact by the declaration of a person not a party to the action.

That the party whose declarations are sought to be proved is dead, affords no ground for the admission of the testimony. The cases in which the declarations of deceased parties are admissible to establish facts, are limited to questions of pedigree, common and some such well-defined cases, and to cases where the party against whom the declaration is sought to be proved is in privity with the former owner of property, who has made some declaration concerning the property.

The case of *Aveson* v. *Kinnaird* was relied on by counsel in *Stobart* v. *Dryden*, 1 M. & W. 615, and must be considered to have been shaken in the English courts, if not overthrown, by the decision in the latter case. It is criticised, attempted to be limited, but substantially overruled in the *Fraternal Mut. Life Ins. Co.* v. *Applegate*, 7 Ohio St. 292, and the contrary rule was distinctly

adopted by the supreme court and the court of appeals in *Rawls* v. *American Mut. Life Ins. Co.*, 36 Barb. 357, and 27 N. Y. 282. In the opinion delivered in the court of appeals in the latter case, it is said "Fish was not, after the issuing to the plaintiff of the policy in suit, a party in interest, and could make no statement or admission that would divest the rights of the plaintiff. * * * * * It might, with equal propriety, be pretended that the defendants could prove, by the admissions of Fish, that he had resided in forbidden districts, or engaged in occupations prohibited by the policy."

The decision and the reasoning in the case last cited seems to cover the question presented here.

The evidence of Dr. Clark, to the admission of which our attention is called by the defendant's counsel as an inconsistent ruling, stands upon a wholly different ground. It was not a mere declaration of a third party, but the testimony of an expert as to the facts founded upon his own observation and examination.

It is claimed that in this case, it appears that the fact that Mulliner was subject to these headaches was material, whereas the court of appeals held, in the case of Higbie, there was no such evidence, and to establish this difference, our attention is called to certain evidence of Dr. Mandeville, to the effect that he deemed the answer which had been given by Mulliner to the question, concerning the trouble with his head and brain, material, and as to what he [Dr· M.] would probably have done in case Mulliner had told him about his headaches. But this testimony of Mandeville established nothing concerning the fact of materiality of the headache, and the same questions were held by the court of appeals, in the Higbie case, to have been properly excluded as immaterial and irrelevant. Immaterial testimony is so, because it tends to establish nothing within the issues.

The only allegations in the answer of the defendant, under which it could be claimed that the defense sought to be set up, in regard to the headache, was admissible, are, that Mulliner represented that he had never had any "serious illness," and that he further represented that "the functions of his brain and his muscular and nervous systems were in a healthy state." There was no evidence to show the falsity of the first of these representations, and no proof that Mulliner ever made the second, as alleged.

What is said in the answer concerning the headache, is not an allegation, but is introduced by way of argument, and as tending to

show that these representations alleged were in fact false. The fact that Mulliner ultimately died from the effects of an overdose of laudanum, taken to cure the headache, does not show that the omission to mention the headaches, and that laudanum was resorted to as a remedy, was material, any more than the fact that a party whose life was assured was killed by the bursting of his fowling piece, or was drowned by falling from a wharf, would show that the omission to state that he was in the habit of using a fowling-piece in the one case, or of doing business on a certain wharf in the other, were circumstances material to be stated, the omission to state which avoided the policy.

We see no other question in the case but what has been considered by the court of appeals on substantially the same evidence, and the motion for a new trial must be denied.

*New trial denied.*