Mr. Justice MacArthur
delivered the opinion of the court:
This was an action to recover the amount of a policy of insurance on the life of Richard H. B. Day for the sum of five thousand dollars. The policy expresses that it is made in consideration of the representations made to the company in the application for the policy, and for the annual premium of $137.50. The policy also contained the following provision: “And it is also understood and agreed by the within assured to be the true intent and meaning hereof, that if the declaration made by or for the said assured, and bearing date the sixteenth day of July, 1869, and upon the faith of which this agreement is made, shall be found in any respect untrue, then, and in such case, the policy shall be null and void.” And there is a corresponding averment in the 9th special plea, which is admitted by the form of the plaintiff’s replication, that it was agreed between the plaintiff and defendant at the time of issuing said policy that the answers of the said Rich *43 ard H. B. Day and of one H. F. Zimmerman, his friend, to certain questions propounded to them on behalf of the defendant on or about the said 16th July, 1869, should be the basis of the contract under which said policy was issued.
The defendant pleaded the general issue and eleven special pleas, in the first of which, after alleging that the policy was to be void by the agreement if the answers were untrue, it is then stated that the said Richard H. B. Day falsely affirmed that he had not had since his childhood habitual cough or bronchitis, or consumption, and no ailments, or diseases, or asthma, or spitting blood, within ten years last past, and that he had not on or about the 16th day of July, 1869, any disease or disorder, and had not had a medical attendant for himself or for his family for ten years.
The second, seventh, ninth, and tenth special pleas also charge untrue representations, but as they are the same in character as those just noticed, no further mention need be made of them.
The replication simply denies that the declarations were untrue. The only question that arises under the issues thus formed was, whether the statements were untrue as alleged in said first special plea.
On the trial of the cause the policy was introduced, dated July 16, A. D. 1869, and in order to show the falsehood of the answers in the application, the defendant put in evidence the medical proof of loss and cause of death, from which it appeared that the said Richard H. B. Day died of pulmonary consumption January 22,3871; aud the physician making the certificate states that he had been the attending or family physician occasionally for ten years. The second bill of exceptions finds that twice in the spring of 1869 Doctor A. X. P. Garnett had prescribed for Day while he had an attack of pneumonia, and afterward had given him prescriptions for chronic bronchitis and habitual hoarseness. Doctor Xoung and Doctor Drinkard had both prescribed for him during the spring, summer, and fall of 1870, and in November of that year they found he had the tubercular consumption of the lungs, and the three physicians testified that in their opinion the disease of said Day was a continuous one, beginning with or before the above-mentioned attack of pneumonia, (which *44 occurred before the policy was effected,) and afterward steadily progressed. In rebuttal the plaintiff introduced testimony as to his condition of health, both before and after the time the policy was issued. There are twelve bills of exceptions upon the refusal of the court to instruct the jury as requested by the defendant, but the thirteenth bill of exceptions to certain portions of the charge of the court will be noticed in the first instance, as its consideration will substantially dispose of all the others.
The- learned Chief-Justice, before whom the cause was tried, instructed the jury that—
“ In reference to the defense set up in these special pleadings, (and the instructions of the court extends to them all,) the court charges you that you must find that they were material and substantial misrepresentations. That the nominal and immaterial misstatement of facts, though known to the applicant at the time of the application for the policy to be untrue, would not avoid the policy. The law holds all parties in a contract to a fair and faithful representation of truth, and will permit neither to trifle with truth in dealing with each other; but the law does not allow trifling or immaterial matter to enter into the consideration of the subject. Now, in giving application to this principle, which the court has endeavored to state, you will inquire in this case, in the light of the representations of the deceased, whether he either suppressed or falsified the condition of Ms health, in such matter and manner as substantially to affect the application that he was making for an insurance.”
We think this direction of the court was erroneous in point of law. There are a number of reported cases in which it is held that the proposal or declaration made for the purpose of procuring a policy of insurance constitutes a part and portion of the contract. In the policy under consideration it is declared to be the true intent and meaning thereof, that if the declaration upon the faith of which the agreement is made shall be found in any respect untrue, the policy is to be null and void, and the provision in the declaration itself is, that the answers of said Day should be the basis of the contract upon which said policy issued. These express stipulations would seem to exclude all doubt that the con *45 tract comprehended both policy and declaration. If this is a correct view, then it must be held that the parties have determined for themselves what they deem material, and it follows, that all statements made by Day about his health, in regard to his having had since childhood an habitual cough, bronchitis, spitting of blood or consumption, or ailments, or diseases, within a period of ten years, or as to his having had a medical attendant for himself or for his family for ten years, are all made material by the contract, and the-only question of fact that can properly be determined by the jury is, whether the statements contained in the proposal on these matters are true or false. The contract is that certain facts are true, or if not true that the company is not to be bound, and it is upon the faith of this agreement that the policy issued.
The party obtaining insurance should exercise great caution truly and carefully to answer the questions furnished by the companies. They know better than any one else as to their condition of health and the disorders from which they have suffered. Insurance companies can know little or nothing of individual cases, and have to rely upon their contracts and the good faith and honesty of applicants. They have, therefore, adopted forms of application, embracing a series of questions to be answered, not only by the person whose life is to be insured, but by his friend, and even by a medical attendant of himself or family. Without these precautions,, it is doubtful whether the business of life insurance could be carried on. Where the insured has honestly and truly answered the inquiries, the companies should be held strictly to a fulfillment of the contract, as it is usually made for the benefit of families, and is regarded as a provision of support for those whom death has deprived of their natural protectors.
For the purpose of securing truthful representations upon the points which affect the risk, the companies usually insert a condition in the policy like the one in this case, rendering it void in case the answers are untrue; and the effect of this condition has been considered in a number of decided cases.
In Kelsey vs. The Universal Life-Insurance Company, 35 Conn., 225, the jury were instructed as follows, inter alia:
“Although, as a general rule, it is true that a paper not *46 attached to a policy does not form part of it, yet it may be that a paper not so attached will be made a part of it, and amount to a warranty by the express terms of it. * * *
Applying this principle to the oase under consideration, if the application of Mrs. Kelsey, and her answers to the questions therein proposed, are part of the policy, or are so referred to as to be recognized and become part of it, they become warranties; that is to say, the plaintiff, by accepting the policy, warrants that the statements which are the condition and consideration of the policy are true. So far as the contract is concerned, they become conditions precedent, so to speak, which he must show have been complied with before he ean recover on the contract. With reference to the policy of insurance under consideration, for the purposes of this case, the court instructs you that the conditions and agreements mentioned in the policy, having reference to the application, which was a part of the consideration on which the policy was issued, are warranties of facts which must be proved true in all particulars.’’
The case was carried to the Supreme Court on motion for a new trial. The Chief-Justice, in delivering the opinion of the court upon this branch of the charge, observed :
“ But the court charged the jury that the conditions and agreements mentioned in the policy, having reference to the application which was a part of the condition upon which the poliey was issued, are warranties of fact, and the plaintiff insists that the charge is incorrect in point of law. In the body of the policy, under the heading of conditions and agreements, is this first condition as to the application: 1. That the statements and declarations made in the applications for this policy, and on the faith of which it is issued, are, in all respects, true, and without the suppression of any fact relating to the health or circumstances of the insured affecting the interest of the company. The reference here to the application is as clear and precise as in the case of Jennings vs. Chenango Mutual Insurance Company, 2 Denio, 75, and the facts stated in the application in that case were held to be warranties. It is true that in that policy the reference to the application alluded to it as forming part of the policy, while in the case under consideration the words are that the *47 policy is made on the faith of the application, and that the statements in it are in all respects true. But we think this stipulation makes the truth of the material facts a matter of contract obligation on the part of the insured, and conditions upon which the policy was issued, and on the truth of which it was .only to bind the company, as if the same had been embodied in the policy itself. And this has been the uniform doctrine of this court.”
And the court then go on to state that while they are satisfied that the charge of the court was correct, yet they deem it proper to remark tha't whether the statements are to be re. garded in the light of warranties or representations, is not very important, inasmuch as the answers were clearly untrue. Several Connecticut cases are referred to in this opinion, showing that statements made in written applications for insurance have been held with great uniformity to be warranties.
The same doctrine has been announced by the supreme court of Massachusetts as unquestioned law. In Miles vs. Connecticut Mutual Life-Insurance Company, 3 Gray, 580, it was held, upon the authorities cited by counsel for defendant, and upon many others, that the statements and declarations contained in the application for insurance, and referred to in the policy, were warranties, and if any of them, whether material or immaterial to the risk, were untrue, either from design, mistake, or ignorance, the plaintiff would not recover. This decision was made with reference to a policy resembling the one in this cause, and the cases sustaining the doctrine in that State are cited by the counsel and recognized and approved by the court.
It would seem that when the proposal is made part of the policy the statements are made warranties, and if untrue in any respect the policy is void. It is equally well settled that the statements made in a written application in answer to inquiries regarding the health and matters appertaining thereto of the person whose life is to be insured, and where it further appears, as in the present case, that the parties have expressly agreed that the policy should be void if the statements were untrue, they'are conclusively made material both as a matter of law and fact by the contract into which the parties have entered.
*48 The recent case of Campbell vs. New England Mutual Life-Insurance Company, 98 Mass., 381, was an action upon a policy of life insurance, expressed to be on the condition that if the statements made by the assured to the company as the basis of the contract shall be found in any respect untrue, then the policy was to be null and void. The proposal was not otherwise referred to in the policy, nor made by express language a part of it, and it was held that the answers contained in the written proposal were material by the contract. The court says : “ But where the representations upon which the contract is based are in writing, their interpretation, like that of other instruments, belongs to the court, and the parties may, by the frame and contents of the papers * * * or by the mode of referring to them in the policy, settle for themselves that they shall be deemed material, and when they have done so the applicant for insurance cannot afterward be permitted to show that a fact which the parties have thus declared to be material to be truly stated, was in fact immaterial, and thereby escape from the consequences of making a false answér to such a question.”
This principle was held to apply to the. policy in that case. And in Devenport vs. New England Insurance Company, 6 Cush., 341-2, the language of the court is: “ The assured having given an untrue answer, whether by accident, mistake, or design, it matters not, to a direct, plain, and practical question, cannot now be heard to say it was immaterial."
In Miller vs. The Mutual Benefit Insurance Co., 2 Bigelow, 693, the application was by a wife for a policy of insurance on the life of her husband, and in it she agreed that the answers of her husband and of his physician and friend should be the basis of the contract, and if untrue that all moneys paid should be forfeited for the benefit of the company. There was also a provision in the policy not differing essentially from that contained in the policy here. The jury were instructed substantially as in the case at bar in this language: “ It is for you to determine the materiality of the alleged misstatements, if any have been proven.” In reference to this the supreme court of Iowa say: This instruction we consider erroneous. * * * * A misrepresentation by one party of a fact specifically inquired *49 about by the other, though not material, will have the same effect in exonerating the latter from the contract as if the fact had been material, since by making such inquiry he implies that he considers it so. In all jurisprudence this distinction is recognized. It is practically to written answers to written inquiries referred to in a policy. * * * Representations of this kind differ from warranties, in that a substantial compliance with them is sufficient to answer their terms. Whether there has been such substantial compliance, that is, whether the representation is in evej, material respect true, is a question of fact for the jury. Rat it is not for the jury to say that the representation, though substantially untrue, is, notwithstanding; immaterial.”
The same principle was recognized in Anderson vs. Fitzgerald, 2 Big., 341, a case which went up from the Irish Exchequer to the House of Lords. There the policy provided that “if any circumstance material to this insurance shall not have been truly stated, or shall have been misrepresented or concealed, or shall not have been fully and fairly disclosed and communicated to the company, or if any fraud shall have been practiced on the said company, or any false statements made to them in or aoout the obtaining or effecting of this insurance, this policy shall be null and void.” There was a corresponding declaration in the proposal and statement. The company alleged that the proposal and statement contained untrue representations of facts. On the trial the judge directed the jury that they “ must not only be satisfied that the various false statements relied on by the defendant were false in fact, and were made in and about effecting the policy, but also that such false statements were material to che insurance, before they could find their verdict for the defendant.”
This ruling was the great point discussed in the House of Lords. The judges were called, as is the practice in such cases, and eleven of them attended, and they unanimously held, with the chancellor and ex-chancellors, that the answers became part of the contract by the very frame of it, and that it was misdirection to leave it to the jury to say whether they were material as well as false, and if not material, that the defendant could not avail himself of them, and that the rep *50 resentation. being part of the contract, its truth, not its materiality, was the question.
The English rule is further illustrated in Lindenan vs. Desborough, 3 Man. and R., 45, Geach vs. Ingall, 14 Mess, and W., 95.
It seems to be now the settled doctrine in both countries that where the contract contains a stipulation that in case answers contained in the statement or application for insurance are untrue, the policy shall be void, and the falsity of the statements has the effect of avoiding the policy, as their materiality is a matter of contract. This is the agreement of the parties, that false statements made in the declaration upon which the policy issued should render it void. It is an established rule in the construction of written instruments that the stipulations and conditions which they contain are binding upon the contracting parties, and when it is plainly declared that the contract shall be void if certain written statements referred to are untrue, surely the materiality of such statements is a matter of contract obligation. The issues in the case at bar were evidently made up with reference to this view of the law. The< replication to the plea we are now considering is in these words: “ And now comes the plaintiff and denies that the declarations of the said Bichard H. B. Day were untrue as in said first plea alleged.” There is no issue raised as to the materiality of the matters set up in the plea. The only question is whether the representations of Day were untrue. This is the proper issue, and the only issue that could be tried in view of the stipulations of the contract.
We think that the question of materiality ought not to have been submitted to the jury, and that the action ought to have been tried upon the issues made up by the pleadings.
Exception is also taken to that part of the charge in which the jury were instructed—
“ 3. If he was possessed of any established disease, any grave and permanent invasion of his health, that looked to his pre mature dissolution, that was calculated to materially hasten it, and you find from the proof that in this regard he misrepresented, and if you further find that he himself knew that he was misrepresenting, it will avoid this policy, and you will find *51 for the defendant; for it must be a misrepresentation with knowledge or conviction that he has falsified the history of his physical condition. And without you find that the deceased was materially diseased, and that he was conscious of it, and being conscious of it misrepresented, you will not set down his errors of judgment to the avoidance of this contract.”
We are of opinion that if the statements made by Day in the application, being part of the contract, to procure the policy were untrue in point of fact, the contract became null and void. This results from the form of the contract. It was evidently the design to protect the company from the ignorance as well as willful misrepresentation of those applying for insurance. If, for instance, Day did not know or suppose that he had consumption, although in point of fact that fatal disease had already seized upon his lungs, his statement would be contrary to the fact in an important respect, for no company would insure a life subject to so much risk. It would be untrue as matter of fact, and therefore fatal to the contract. In the case of Anderson vs. Fitzgerald, already mentioned, Baron Parke observed:
“A doubt possibly may exist, whether the word 'false’ is to be understood as false in point of fact, or morally false, though I believe most of us think it is not to be limited to moral falsehood, but there seems to us to be no doubt that if the statements are false in whatever sense we understand that word being used in effecting the insurance, the proviso operates. There then appears to us to be only two questions for the jury on this part of the policy. Were the statements false % Were they made in obtaining or effecting the policy V
The cases cited on appellant’s brief, together with others which I have examined, fully sustain the same view. Indeed I have been unable to find that the point has been otherwise decided when fully brought to the notice of the court. In addition to the cases cited by appellant, I refer to the following: Miles vs. Connecticut Mutual Life-Insurance Company, 3 Gray, 580; Rawle vs. American Life-Insurance Company, 36 Barb., 357.
The policy contained a condition, that if the premium was not paid when due, it should cease and determine; and the other special pleas of the defendants aver that the pre *52 mium falling due July 16,1870, was not paid, and said policy lapsed, but that in October following it was renewed and re-instated upon the condition that such re-instatement should be void if said Bichard H. B. Day should not be in sound health. And it is further averred that he was not in sound health, and had had derangement of health since the issue of the policy. There can be no doubt but that the policy and the representations upon which it is based and the renewal are to be considered together. The renewal of a contract necessarily imports a continuance of its terms, and the stipulations of the renewal will therefore have legal effect together with the terms of the original policy. The observations already made are therefore equally appropriate to these latter pleas, and need not be repeated.
As we are of opinion that it was error to submit the materiality of the misstatements alleged in the pleas to have been made by Day to the consideration of the jury, and also whether he knew that they were untrue,
The verdict must be set aside and a new trial ordered.