McKENNEY (FOXALL v.). See Case No. 5,016.

McKENNY (BANK OF COLUMBIA v.). See Case No. 874.

McKENNY (BANK OF THE UNITED STATES v.). See Case No. 926.

McKENSIE (BANK OF THE UNITED STATES v.). See Case No. 927.

## Case No. 8,854.

McKENTY v. UNIVERSAL LIFE INS. CO.

[3 Dill. 448; 3 Ins. Law J. 385; 6 Chi. Leg. News, 199; 4 Bigelow, Ins. Cas. 153.] [1]

Circuit Court, D. Minnesota. Jan. 7, 1874.

LIFE INSURANCE POLICY—INSURABLE INTEREST OF CREDITOR—SURRENDER—ACTION FOR BALANCE BY ADMINISTRATOR.

A policy of insurance was issued for $3,000 upon the life of a debtor, payable upon his death to his creditor: on the death of the assured, the creditor holding the policy received from the insurer $2,050.57, "in full of all claims under the policy," and surrendered it; afterwards the creditor assigned "all his right, title, and interest in the policy" to the administratrix of the assured, subject to the amount he had received from the company in payment of his debt. *Held*, that an action by the administratrix, under such assignment, against the insurer for the balance of the $3,000 could not be maintained.

The plaintiff [Johannah McKenty], administratrix of the estate of Henry McKenty, deceased, brought suit upon a policy issued on the latter's life by the defendant.

The following is a copy of the policy: "Universal Life Insurance Company, of New York. This policy of insurance witnesseth, that the Universal Life Insurance Company, in consideration of the representations made to them in the application therefor, and of the sum of $36.10, lawful money of the United States,

first in hand paid by Henry McKenty, and of the quarter-annual payment of a like amount on or before the 14th days of October, January, April, and July, in every year during the continuance of this policy, at the office of said company in the city of New York, or to their agents, as hereinafter provided, do hereby promise and agree to pay to Charles H. Parker, the assured under this policy, his heirs, executors, or assigns, at their office aforesaid, the sum of three thousand dollars, lawful money of the United States (the balance of the current year's premium, if any, being first deducted therefrom), in thirty days after due notice and proof of the death of Henry McKenty, of San Francisco, in the county of San Francisco, and state of California, whereupon this policy shall cease and determine. * * * In witness whereof the said Universal Life Insurance Company have, by their president and secretary, signed and delivered this contract this fourteenth day of October, A. D. 1868. Wm. Walker, President. Jno. H. Bewley, Secretary."

Parker, the assured, was a creditor of McKenty, and after his death, on payment of his debt, executed the following receipt: "New York, February 26, 1870. Received from the Universal Life Insurance Company two thousand and fifty-six and 57/100 dollars, in full for all claims under the within policy, terminated by the death of Henry McKenty. C. H. Parker."

On receiving this amount, Parker surrendered the policy to the company. Afterwards, and on the 12th day of April, 1871, Parker executed the following assignment to the plaintiff, administratrix of the estate of her husband: "San Francisco, April 12, A. D. 1871. For value received I hereby assign to Mrs. Johannah D. McKenty, as administratrix of the estate of Henry McKenty, late of St. Paul, Ramsey county, Minnesota, deceased, all my right, title and interest in, to and by virtue of a certain policy of insurance number 5,736, dated October 14, 1868, made and issued by the 'Universal Life Insurance Company' of New York, to said Henry McKenty, then of San Francisco, California, for $3,000, payable to myself (Chas. H. Parker). This assignment being made to said Mrs. McKenty, as aforesaid, subject to the payment of the sum of about sixteen hundred dollars heretofore paid to me thereon by said company and receipted for by me. This assignment is made without recourse to me in any event or under any circumstances. Charles H. Parker."

On the trial the court ruled as shown in the opinion below given.

Gilfillan & Williams, for plaintiff.
Lorenzo Allis, for defendant.

NELSON, District Judge. This contract of insurance was effected by Parker, although the first premium appears to have been paid by McKenty. Parker was a creditor of Mc-

[1] [Reported by Hon. John F. Dillon, Circuit Judge, and here reprinted by permission. 3 Ins. Law J. 385, contains only a partial report.]

Kenty, and had such an insurable interest as would entitle him to recover in a suit against the company, had it refused payment to him.

The better opinion at this time is that policies of life insurance are not like fire and marine insurance, contracts of indemnity. The agreement is that in consideration of a certain annual, semi-annual or quarter-annual payment of money to the company, it will, on the death of the party whose life is insured, pay to the person named in the policy a certain amount therein specified.

It is unnecessary in this case to decide whether upon this policy the assured named therein could recover any more than his debt due at the time of the death of his debtor. This action is not brought by him as the beneficiary named in the policy, but by the administratrix of the estate of the deceased whose life was insured, and she seeks to recover the surplus over and above the amount paid to Parker by the company. It is undisputed that Parker was paid, on the death of McKenty, all that he claimed, and he has given a receipt in full of all demands against it, and surrendered the policy.

To sustain the demand made by the administratrix, it is urged that "Parker was a trustee for the estate of McKenty on his death for the amount of the policy, over and above his interest in it (which is said to be the amount of his debt), and that the receipt given by him in full of all demands, and the surrender of the policy can not affect the estate." I do not think the policy upon its face, or the testimony, shows that any one but Parker had an interest in it.

It was possible to effect an insurance so that a portion of the loss would go to the decedent's estate, and to have made the assured named in the policy a trustee to receive it; but there is nothing in the case to indicate that any such purpose was intended.

The plaintiff can not recover, under the assignment from Parker to her, after the latter had been paid by the company the full amount he claimed. At the death of McKenty, the right of action upon the policy belonged to Parker alone. He made his claim, and offered proofs to maintain it, was paid the amount and gave a receipt in full for all demands. That put an end to all his interest in the policy, and it is not possible for the plaintiff, who claims under an assignment made after this receipt was given, to recover anything more from the company. See Bliss, Ins. § 554; Rawls v. American Mut. Life Ins. Co., 27 N. Y. 282; [Insurance Co. v. Robertshaw, 26 Pa. St. 189.] [2]

Judgment for defendant.

On a motion for a new trial the court gave the following opinion:

NELSON, District Judge. This case is not to be governed by the common-law rule defining what constitutes a good accord and

[2] [From 6 Chi. Leg. News, 199.]

satisfaction. Parker, the creditor and assured, did not urge a claim for or demand the full amount named in the policy, but agreed, on a sufficient consideration paid him, to exonerate the company from all further liability; received it, and gave his receipt in full, and surrendered the policy. This, in my opinion, had the effect of an absolute release, as much so as it would have been if a formal instrument had been drawn up and signed and sealed.

The old common law rule of accord and satisfaction was always considered technical, and unsupported by reason. Dewey, J. in Brooks v. White, 2 Metc. (Mass.) 283, says: "The foundation of the rule seems to be, that, in the case of an acceptance of a less sum of money in discharge of a debt, inasmuch as there is no consideration, no benefit accruing to the creditor, and no damage to the debtor, the creditor may violate with legal impunity his promise to his debtor, however freely and understandingly made." This is a rule founded on very poor morals to say the least, and it has been doubted whether it would apply to anything but a bond.

In Co. Litt. 212b, it is said, that "where the condition is for payment of twenty pounds, the obligor can not * * * pay a lesser sum in satisfaction of the whole, because it is apparent that a lesser sum can not be a satisfaction of a greater. But if the obligee do * * * receive part, and therefore make an acquittance, under seal, in full satisfaction of the whole, it is sufficient, by reason the deed amounteth to an acquittance of the whole." Thus we see that the common law rule was intended to secure only a settled and deliberate agreement to discharge the debt. When this appeared and was established, the acquittance of the whole is admitted.

A formal instrument under seal is not the only evidence in my opinion to establish a release. The surrender of the policy in this case by Parker, was, to say the least, prima facie evidence of an intention to release all claims under it, and when this fact is conceded, and a receipt in full of all demands is written upon the face of it, and signed by him, I think in law the company is absolutely discharged.

The other point presented, to-wit, that the construction of the contract, so far as the intention of the parties thereto, should have been left to the jury, is not tenable. The policy was the only evidence in the case to indicate what was the intention of the parties. There is no evidence outside to show that the assured was a trustee, and that when his debt was paid he must account for the balance of the amount specified in the policy. The question presented was, "what is the legal construction of the contract?" This the court decided and so charged the jury. Upon the conceded facts in the case, in the view taken by the court, there was no issue of fact for the jury to decide which would authorize

a verdict for the plaintiff. See 2 Hare & Wallace's Notes to Smith's Leading Cases, p. 439. Motion denied.

As to nature of life policies and conflicting decisions as to the continuance of the creditor's interest down to the death, and the extent of recovery, see May, Ins. §§ 7, 8, 110, 118. Phoenix Ins. Co. v. Bailey, 13 Wall. [80 U. S.] 616. Bliss, Ins. §§ 24, 30, 31; Swick v. Home Ins. Co. [Case No. 13,692].