JAMES D. FERGUSON, RESPONDENT, *v.* THE MASSA-
CHUSETTS MUTUAL LIFE INSURANCE COMPANY,
APPELLANT.

*Right of a creditor to take out a policy of insurance upon the life of his debtor — his
right to recover the amount of the policy is not affected by the subsequent payment
of the debt — estoppel — when a company is estopped from setting up a breach of
warranty.*

Where a creditor acting in his own behalf, and not under an agreement with, or
as the agent of the debtor, procures a policy of insurance to be issued upon
the life of the latter, to an amount not exceeding the then existing debt of
the latter to him, and himself pays the premiums falling due thereon up to the
time of the debtor's death, his right to recover the amount named in the policy
is not affected by the fact that the debt has, prior to that time, been partially
or fully paid, or that the debtor has received a discharge in bankruptcy.

A policy of insurance upon the life of the plaintiff's brother was issued by the
defendant to the plaintiff in January, 1870. In 1871 the company commenced
an action to have the policy canceled and declared void on the ground that
it was procured by false and fraudulent statements made by the present
plaintiff in his application for the policy. In that action the company was
defeated. It was claimed by the plaintiff, upon the trial of the present action,
that after the decision of the former action he had an interview with the
defendant's agent, in which he was assured by the agent that there would be
no more trouble, and that when his brother died the plaintiff would get the
amount named in the policy, and that relying upon this assurance, he had
paid the subsequent premiums.

*Held,* that if the jury found this statement to be true, and that the company at the
time of making it had knowledge of the facts which were alleged to constitute
the breach of warranty, it was estopped thereby from disputing the validity
of the policy in this action.

APPEAL from a judgment, entered in Oneida county, and also from
an order denying a motion for a new trial made upon the minutes of
the justice before whom the action was tried, after a verdict rendered
for the plaintiff.

The action was brought upon a policy of life insurance issued by
the defendant in January, 1870, upon the life of Amos S. Ferguson,
a brother of the plaintiff. The plaintiff, at the time the policy of
insurance was issued, was with John W. Bridenbecker, a joint-
indorser for his brother Amos for about $6,000.

The defendant's answer, besides a general denial, alleges fraud,

breaches of warranty, misrepresentation and concealment of known and material facts in the application; a total want of insurable interest prior to, and at, and after the issuing of the policy, and set up a counter-claim to a part of the plaintiff's claim. The defendant admitted its incorporation and the issuing of the policy for $5,000; the death of Amos S. Ferguson and the delivery of the proofs of his death, as alleged in the complaint. The trial judge assumed to rule on the question of the effect of a discharge in bankruptcy, the same as though the answer had averred a discharge in bankruptcy of the plaintiff's debt. The plaintiff in his reply alleged that in 1871, the defendant brought an action in this court to have declared void, delivered up and canceled, the said policy of insurance, upon the grounds and for the reasons substantially set up in the defendant's answer in this action, and that such action was tried and judgment rendered in favor of the plaintiff here, who was defendant in that action, and after the judgment the defendant here acquiesced in the same and demanded and received the premiums on said policy down to the death of Amos S. Ferguson, and that by reason of such judgment and of the receipt of premiums, the defendant is estopped from denying the validity of the policy, and from attempting to prove the defenses set up in the answer herein. This action was brought to a trial in May, 1878, and resulted in a verdict directed for plaintiff. An appeal was taken to this court and the judgment reversed. (See 22 Hun, 320.) Upon the trial now brought up for review the principal question litigated were whether or not, at the time the policy was issued, Amos S. Ferguson was indebted to the plaintiff in the sum of $500, and (second) the alleged breaches of warranty as to the health of Amos; whether or not he had "disease of the heart," or "palpitation," and whether or not the answer to one of the questions was evasive and untrue. Conflicting evidence on the latter question was given, and the trial judge submitted the question of fact to the jury. A verdict was rendered for the plaintiff for the amount of the policy and interest, less the set-off allowed for $5,408.37, and judgment was entered for $6,011.43.

March 23, 1867, Amos S. Ferguson made his note for $6,000 to the order of the plaintiff and John W. Bridenbecker, and they indorsed it for the accommodation of the maker. It was protested at maturity and the plaintiff took it up by paying it to the National

Mohawk Valley Bank. The plaintiff become the owner of the note, and held it when the policy was issued in January, 1870, and the plaintiff at that time also held a debt against Amos for $419.37. March 27, 1868, the plaintiff and Bridenbecker recovered a judgment for $6,464.64 against Amos S. Ferguson on the indebtedness of $6,000, as aforesaid. Amos S. Ferguson died on the 15th of May, 1877.

In the application for the policy, which was made and dated January 27, 1870, the plaintiff declared that he had an interest in the life of Amos S. Ferguson, " to the full amount of the said sum of five thousand dollars." The annual premium was $206.50, and the plaintiff produced receipts therefor up to the time of the death, which premiums were paid by him. The court held that if the plaintiff had " an insurable interest at the issuing of the policy, that is sufficient." The defendant excepted. The defendant offered to show " that at the time of the death the plaintiff had no insurable interest." The offer was objected to and excluded, and the defendant excepted. The defendant offered in evidence the discharge of Amos S. Ferguson in bankruptcy, dated the 28th day of April, 1868; this was objected to as immaterial, and on the ground that the discharges was not pleaded. The court sustained the objections, and the defendant excepted.

At the close of the evidence the defendant moved for a nonsuit upon the grounds, First. There was breach of warranty as to the health of Amos S. Ferguson. Second. That plaintiff had no insurable interest in the life of Amos S. Ferguson, " either at the time the policy was issued, or at the time of his death;" it also offered to return the premiums. The motion was denied and the defendant excepted

The court then ruled and decided that under the policy the plaintiff must have had an insurable interest of $5,000 when the policy was issued, and that the jury must so find; if his insurable interest was less than that sum, the policy would be vitiated. The case was submitted to the jury.

*Alexander Coburn* and *Spriggs & Mathews,* for the appellant.

*Francis Kernan,* for the respondent.

HARDIN, J. :

*First.* Whether the plaintiff as a creditor was interested in the life of Amos S. Ferguson in January, 1870, or not, was made a question of fact by the conflicting evidence upon the trial, and we think the evidence warranted the court in submitting that question to the jury. The trial judge laid down the law correctly in that regard, when he told the jury that the plaintiff could not recover if he did not have that interest in the life of Amos, when in January, 1870, the policy was issued. Defendant had given some evidence tending to show some arrangement in 1866, when Amos sold his farm and took back a mortgage for $4,000. Plaintiff as a witness testified that no compromise or settlement was made, and the mortgage was turned over as a collateral to the indebtedness, and by him held as such until its payment, which did not occur until after the policy was issued. We do not feel at liberty to disturb the verdict upon that question of fact. Plaintiff produced a note for $6,000 dated March 23, 1867, made by Amos S., and gave the history of it, and also testified to a balance due upon an account of $519.37, and stoutly maintained that such items of indebtedness were held and owned by him when the policy was issued. Against that kind of evidence stood the evidence of Charles Ferguson, to the effect that in 1866 he purchased of his father Amos his farm for $4,000 over the incumbrances, and gave his notes for such $4,000, and a mortgage to secure them, to Bridenbecker in full satisfaction and payment.

The judgment in 1868 was then produced by plaintiff, and he disputed flatly what Charles said as to an adjustment and satisfaction. We do not feel persuaded that the verdict is against the weight of the evidence on this branch of the case. We therefore shall assume, as the verdict finds, that the plaintiff had an interest in Amos life of $5,000, when the policy was applied for and issued.

*Second.* We now come to the questions made at the trial, as to the effect of a partial payment of the indebtedness in the lifetime of Amos, to the effect of his discharge in bankruptcy, and to the effect of an actual payment of the indebtedness in the lifetime of Amos, and to the position of defendant that the plaintiff cannot recover if he did not at the time of the death of Amos have an insurable interest in the life of Amos. It is insisted in behalf of the defendant that on a former appeal (22 Hun, 325) the latter branch of the position was determined

by the court in favor of the position of defendant. We do not think so; though it must be admitted that such a *dictum* appears in the opinion of Presiding Justice TALCOTT, who spoke for the court on that occasion. The cases referred to by him in connection with that *dictum* do not bear out the expression. He referred to *Shotwell* v. *Jefferson Insurance Company* (5 Bos., 247); *Murdock* v. *Chenango Insurance Company* (2 N. Y., 210); *Fowler* v. *New York Insurance Company* (26 id., 422); *Freeman* v. *Fulton Fire Insurance Company* (14 Abb., 398); *Mutual Life Insurance Company* v. *Wager* (27 Barb., 359).

They were cases relating to fire insurance policies, and do not at all support the *dictum* as applied to this case. That the question now here was not decided by the court in the former appeal, appears by a careful examination of the presiding justice's opinion. Towards the close of it he says, viz: " We think the verdict was erroneously directed *for the reason* that the judgment in the former action was received as an absolute bar, and an estoppel against the defendant's defense, not only of a want of interest in the plaintiff in the life insured by the policy, but also as a *bar to the defense* of a breach of warranty.

" But in so holding we do not mean to be understood as deciding but what the subsequent payment and receipt of the *premiums*, *with notice* to the company of the facts which are set up as breaches of the warranties, *may* have estopped it from setting up *those defenses; but only* that the verdict was directed on erroneous grounds, and because there may be questions of fact as well as law to be disposed of on another trial."

We are at liberty to consider as open for decision in this court, the questions which we have alluded to, relating to the question of plaintiff's interest in the life of Amos, when the death occurred. In considering this question it must be borne in mind that the premiums were all paid by the plaintiff with his own money, and that he was in no sense acting for Amos in such payments. He had no right to charge them to Amos, nor did he attempt to do so. Plaintiff's application for the policy was independent of Amos. It was bargained for by plaintiff, without any agreement whatever with Amos in regard to it. It is inferable that the plaintiff paid in premiums just as much as the defendant would have charged Amos

for a policy on his own life. In either case it is the usual practice of insurance companies to fix the amount of premium to be exacted, in reliance upon tables made up by considering the probabilities of the duration of the life upon which the policy runs. Besides, the stipulations of the policy have no reference to the creditor's claim upon the debtor. The policy is not in terms made collateral to the creditor's debt, as is the case in respect to fire insurance policies. But it contains an absolute contract to pay a stated sum upon the happening of a specified event, namely, the close of the life named in the policy.

There being a debt at the time the policy is issued, it is then valid. It contains no condition referring to the continuance of the indebtedness. But, on the contrary, the policy evidences a flat and positive promise to pay a given sum at the termination of the life named. Death removes the last condition precedent except, perhaps, the delivery of proofs of the death. Then the holder becomes entitled to demand the sum named in the promise. Of course, in fire policies, the nature of the promise is different. That is a contract of indemnity against loss. The nature and extent of the loss must be shown, and only to the making good of the loss is the insurer bound in the very terms of his contract. No statute has gone so far as to declare that a life policy, valid in its inception because of a creditor's interest in the life of his debtor, shall be invalid the moment the debt is paid. (*Goodwin* v. *Mass. Life Ins. Co.*, 73 N. Y., 497.) Besides, from the nature of the contract, which is paid for by the creditor, he needs the payment of the policy to do complete justice to him. Suppose he has received, subsequent to payment of premiums for years, the debt due from his debtor, he has thus received only what it may be assumed he has advanced or loaned to his debtor. He has received nothing for the series of premiums he has delivered over from year to year to the insurer to keep alive the policy. So, too, in the case at hand, if we were to hold that the policy was avoided by payment or discharge in bankruptcy of the debt, the creditor would surely be the loser of the premiums paid, after the payment of his debt or the discharge in bankruptcy, and the insurance company would be the gainer. It would keep in its coffers moneys which it received as a consideration for its *promise, which it had not kept.* It would be the gainer

by the incidental circumstance that the debtor had paid what only he justly owed his creditor, or what he had escaped paying by obtaining a discharge in bankruptcy. Surely no such contingency was taken into mind or measured in fixing the amount of premiums demanded for the policy. That amount was ascertained by the standard tables relating to the probabilities of human life upon which life insurance companies anchor when they fix and determine the schedule of premiums to be exacted in the conduct of their business. We are, upon principle, prepared to agree with the English court in its conclusion in *Dalby* v. *India and London Life Assurance Company* (28 Eng. Law and Eq., 312). Indeed, we think the doctrine of that case has been accepted in this State, and that both upon principle and authority we should say that the insurer is bound to fulfill its contract, valid in its inception, notwithstanding the debtor upon whose life it runs may have paid his creditor or obtained a discharge in bankruptcy therefrom. (*Rawls* v. *American Life Ins. Co.*, 36 Barb., 357; affirmed 27 N. Y., 282; *St. John* v. *American Mut. Life Ins. Co.*, 3 Kern., 31, and note at p. 41; *Olmsted* v. *Keys*, 85 N. Y., 598, 599; Bliss on Life Ins., § 30; May on Ins., §§ 115, 116.)

The discharge in bankruptcy did not destroy the moral obligation of the debtor to pay his debt. (*Dusenbury* v. *Hoyt*, 53 N. Y., 521.) Besides, it appears that no such defense as a discharge in bankruptcy was interposed in the action brought upon the debt, or set up in a supplemental answer, and judgment passed againt the debtor and remained unquestioned when the policy matured. The discharge in bankruptcy at most was a personal defense, which by not pleading or asserting by motion for a perpetual stay the debtor could waive. The discharge when granted operates to cut off the creditor's remedy for the enforcement of his debt by judgment and execution as fully as the statute of limitations. And the nature of either of the two defenses does not suggest any distinction between them, so far as they may affect the question of an insurable interest in a creditor, after the right to interpose such a defense has arisen in favor of the debtor. In *Rawls* v. *The American Life Insurance Company* (27 N. Y., 282) it was held that a creditor's insurable interest continues, although the statute of limitations would have barred his action on the debt if pleaded before the debtor's death.

(See, also, 85 N. Y., 598.)   We have not overlooked the fact that a discharge in bankruptcy might have been used upon a motion for a perpetual stay of the judgment by the debtor.   (*Cornell* v. *Dalken,* 38 N. Y., 253.)   But it appears the debtor made no such use of it, though he continued in life nearly ten years after the recovery of a judgment against him upon the debt existing at the time the policy was issued.

After the recovery of judgment, March 27, 1868, the discharge granted April, 1868, was not asserted by the debtor upon any motion for a perpetual stay of execution or otherwise.   We see no sound reason why the defendant should now avail of or profit by the discharge.   Defendant urges that in a case where the debt has been paid a payment by the insurance company of the policy would be a payment of the debt a "second time."   Not at all.   The company simply observes its contract to pay a stated sum of money in return for premiums received, as soon as the death happens, which is the only event named in its contract which must occur before its promise becomes absolute.

The case of *Babcock* v. *Bonnell* (10 Weekly Dig., 158; S. C., 80 N. Y., 244), cited by appellant's counsel, is unlike the one before us.   There it was found as a fact that the policy was taken out and delivered to defendant as collateral security for an indebtedness of the firm, and it was held that when that indebtedness was discharged the defendant had no further right to the policy.   The deceased debtor obtained the policy, paid the first premium, and delivered it as collateral to certain debts, and they were paid in part and compromised, and the court found defendant had no other interest in the policy and was bound to account for it.   The case is not like the one before us.   *Ruse* v. *The Mutual Benefit Life Insurance Company* (23 N. Y., 523, and S. C., 24 id., 653), on motion for a reargument, does not aid the appellant.   That case declares that at the time the policy is issued, the party obtaining it must have an insurable interest, and that in the absence of proof, that fact is fatal to a recovery.   Judge SELDEN's opinion shows that without such interest the policy would be a wager one, and void at common law, as well as by the statute of 14 George III.

We pass from this branch of the case, having reached the conclusion that the partial payment of the debt, a discharge in bank-

ruptcy, a full payment of the debt, if made out by the evidence, would not have constituted a defense to plaintiff's claim upon the policy, or to any part thereof.

*Third.* Whether there was a breach of warranty or not became a question of fact. (*Grattan* v. *The M. Life Ins. Co.*, 92 N. Y., 274.) The evidence was conflicting. It was competent for the plaintiff to show that there had been no breach of warranty. In doing so it was proper to receive evidence from the plaintiff "as to the health of the party whose life is insured, * * * as to his health prior to the application for the policy." (*Rawls* v. *The A. M. Life Ins. Co.*, 27 N. Y., 282.) If the plaintiff knew of nothing to indicate that Amos was not in good health, the warranty was not broken even though there were germs of disease. (*Grattan* v. *The M. Life Ins. Co.*, *supra.*)

In addition to the conflicting evidence upon the subject of whether there had been a breach of warranty or not, which the court submitted to the jury properly, as we think, there was a question arising upon the evidence as to whether the defendant had become estopped from setting up a defense growing out of the breach of warranty alleged. Defendant in its suit against the plaintiff in 1873 had been defeated, and after the decision thereof by Judge DOOLITTLE, an interview was held with defendant's agent by plaintiff in respect to the policy and any further objection to it. True, the plaintiff gives one version of that interview, and the agent Prendergast gives another, and thus a question of fact arose in respect thereto. But we think it was proper to submit that question of fact to the jury. The law was correctly laid down by the trial judge in his charge to the jury as to the rights of the parties, and it was left for the jury to say which version was correct. They have found favorably to the plaintiff, and we see no occasion to disturb their verdict on that branch of the case. By their finding it appears plaintiff paid back and subsequent premiums, relying upon the assurance of the company through its agent "that there would be no more trouble, and that when plaintiff's brother died the money would be ready and he would get his $5,000."

In order to find this issue favorable to the plaintiff, the judge instructed the jury they must find that the defendant had knowledge of the facts which it was alleged constituted the breach of warranty.

Under such a finding the company ought to be held estopped from further litigating the validity of the policy. ( *Vial* v. *The Genesee M. Ins. Co.*, 19 Barb., 440 ; *Carroll* v. *Charter Oak Ins. Co.*, 38 id., 402 ; *Rowley* v. *The Empire Ins. Co.*, 3 Keyes, 557 ; Herman's Law of Est., §§ 467, 548 ; *Lycoming Ins. Co.* v. *Slockbower*, 26 Penn. R , 199 ; *Witherell* v. *Maine Ins. Co.*, 49 Me., 200 ; *Devins* v. *Insurance Co.*, 83 N. Y., 169, 173.)

*Fourth.* No error was committed in excluding the evidence of Doctor Watson, based upon information derived from the deceased while he was under treatment from the doctor.    Information acquired while attending a patient professionally is privileged, and a physician is not allowed to disclose it.    Defendant could not waive the objection to it.    The rulings of the court were within the settled law in respect to such evidence.    (Code of Civil Pro., § 834 ; *Edington* v. *Mutual Life Ins. Co.*, 67 N. Y., 185 ; *Grattan* v. *The M. Life Ins. Co.*, 28 Hun, 430 ; S. C. affirmed, 92 N. Y., 275.)

*Fifth.* We see no error in receiving in evidence the premium receipts, sixteen in number, issued by defendant as evidence of payments made by plaintiff.    They furnished evidence of the amount of money the defendant had received from plaintiff.    Although the payments were not disputed by defendant in its pleadings, we see no error in allowing the evidence to be given.

Some other exceptions were taken by defendant, which we have examined without finding any error.    Our opinion is, therefore, that the judgment and order should be affirmed.

SMITH, P. J., and BARKER, J., concurred.

Judgment and order affirmed.